UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY ELIZABETH SCHIPKE,<br>        Plaintiff,<br><br>        v.<br><br>TRACFONE WIRELESS, INC., *et al.*,<br>        Defendants. | No. 3:15-cv-1244 (SRU) |

### RULING AND ORDER

Mary Elizabeth Schipke, appearing *pro se*, brought this action in Connecticut state court against TracFone Wireless and its president, Frederick J. Pollak. The defendants removed the action to federal court on the basis of federal question jurisdiction. There are currently three pending motions: Schipke's motion for a preliminary injunction (doc. # 10); her motion for an expedited ruling (doc. # 23); and the defendants' motion for judgment on the pleadings (doc. # 8). Schipke's motion for an expedited ruling, insofar as it seeks a ruling on her motion for a preliminary injunction (but in no other respect), is granted in the form of the ruling that follows. For the reasons discussed below, her motion for a preliminary injunction is denied and the defendants' motion for judgment on the pleadings is granted.

I.  **Standard of Review**

   A.  Rule 12(c) Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Pursuant to that standard, the defendants' motion will be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69,

73 (1984). When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, I must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether the plaintiff has set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

    B.  <u>Rule 65(a) Preliminary Injunction</u>

"The fundamental purpose in granting preliminary injunctive relief has always been to preserve the court's ability to later render a meaningful final decision on the merits by preventing irreparable harm in the interim." *H & R Block Eastern Tax Services, Inc. v. Brooks*, 3:00-cv-1332 (JCH), 2000 WL 33124809 *2 (D. Conn. 2000). A preliminary injunction is appropriate if a litigant demonstrates: "(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999). "In ruling on an application for a preliminary injunction or temporary restraining order, the courts have taken into account the following four most important factors: (1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the state of the balance between the aforementioned harm and the harm that granting the injunction would inflict on the opposing party; (3) the probability that the plaintiff will succeed on the merits; and (4) the public interest." *Minnesota Mining & Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 277 (D. Conn. 2002); *Phillip v. National Collegiate Athletic Ass'n*, 960 F. Supp. 552 (D. Conn. 1997).

**II.    Discussion**

The Lifeline federal benefit program—conceived as means of ensuring the availability of basic telecommunications services for all Americans—provides subsidized (and sometimes free) telephone service to qualifying individuals and families with low incomes. Lifeline is administered by the Universal Service Administrative Company and overseen by the Federal Communications Commission ("FCC"), but the telephone service itself (which may be landline service or, since 2005, cellphone service) is provided by various third parties. TracFone is one such wireless provider that participates in Lifeline as an "eligible telecommunications carrier" ("ETC") with its Safelink brand.

Schipke was a beneficiary of the Lifeline program and user of a Safelink cellphone until TracFone terminated her service. She alleges that TracFone terminated her service because she is homeless, and that doing so therefore violated her state and federal Constitutional rights, the Americans with Disabilities Act, and Connecticut's Homeless Person's Bill of Rights.

The FCC has promulgated regulations implementing the Lifeline program, and among them is a requirement that ETCs ensure "that their Lifeline subscribers are eligible to receive Lifeline services." 47 C.F.R. § 54.410(a). In order to receive Lifeline benefits, subscribers must establish eligibility both upon enrollment and annually thereafter by providing certain information to their ETC. 47 C.F.R. § 54.410. The FCC also requires ETCs to de-enroll any subscriber who fails to respond to the carrier's attempts to obtain re-certification. 47 C.F.R. § 54.405(e)(4).

Lifeline subscribers are limited to one phone per household, and in order to enforce that limitation and to detect fraud and waste, the FCC requires that subscribers provide a residential address to establish eligibility. 47 C.F.R. § 54.410(d)(4). Of course, because the program serves people with (often severely) limited financial resources, the FCC anticipates that some will not

have stable circumstances, and it provided for that possibility in an order reforming and modernizing the program:

> We recognize that there are also circumstances where an applicant may not have a permanent residential address due to a temporary living situation or because the address is not recognized by the post office. In the case of temporary living situations, the applicant must provide a temporary residential address or other qualifying address, such as the address of a temporary shelter, or a friend or family member . . . . In the case of addresses not recognized by the post office, including residences on Tribal lands, the applicant must provide a descriptive address . . . .

*In the Matter of Lifeline & Link Up Reform & Modernization*, 27 FCC Rcd 6656, 6696 (2012), at ¶ 87.

Schipke states in her complaint that TracFone terminated her service "simply because [she] is experiencing homelessness and does not have a current address," Compl. 5 (doc. 1-1 at 7), and the defendants have in substance confirmed the latter allegation: that her service was terminated because she failed to re-establish eligibility by providing an address. I note that the defendants exchanged emails with Schipke—which they attached as an exhibit to their opposition to her motion for an injunction—and explained to her their obligations under federal regulations and their powerlessness to change those regulations, and they offered to re-start her Lifeline service if she complied with those rules by providing the address of "a shelter, the address of a friend or family member or other place, even if" that address was only temporary (doc. # 6, at 6–7; Ex. C, doc. # 6-3). Schipke did not, however, provide any such address.[1]

Schipke's circumstances are sympathetic ones, and her situation is no doubt very difficult, but her grievance is with the FCC's rule that requires even homeless beneficiaries of the

---

[1] The defendants also voluntarily offered to settle the case by reactivating her phone with free minutes for which they would not be reimbursed by the government (*id.*). Schipke initially declined that offer, (*id.*), but she notes in her motion to expedite a ruling that the defendants did reactivate her phone with free minutes, though with fewer minutes than she would receive in the federal program (doc. # 23, at 3).

Lifeline program to provide at least a temporary address, which may be quite difficult for her to provide. But she is not suing the FCC or challenging that rule; she is, rather, suing parties who have no choice but to comply with the federal regulations. The defendants in this case are powerless to re-enroll Schipke in the federal program without an address, and the complaint therefore alleges no plausible claim against them. Accordingly—though Schipke is encouraged to seek some address, even if temporary, to re-establish eligibility, and though the defendants are encouraged to work with her insofar as it is possible to do so—the defendants' motion for judgment on the pleadings is granted, and Schipke's motion for an injunction is denied. The Clerk shall enter judgment for the defendants and close the case.

    So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of November 2015.

    /s/ STEFAN R. UNDERHILL
    Stefan R. Underhill
    United States District Judge